Mary Beth MAHONEY., Plaintiff,

v.

ERNST & YOUNG LLP, Defendant.

No. CIV.A. V–04–41.

United States District Court,
S.D. Texas,
Victoria Division.

March 21, 2006.

Scott Newar of Law Office of Scott Newar, Houston, TX, for Plaintiff's.

Katherine E. Flanagan of Littler Mendelson, Houston, TX, for Defendant's.

## ORDER

RAINEY, District Judge.

Before the Court is Magistrate Judge Nancy K. Johnson's Memorandum, Recommendation, and Order ("M & R") entered February 2, 2006 (Dkt.# 94). Timely objections to the M & R were filed by the Plaintiff on February 16, 2006 (Dkt.# 95). After considering the M & R, the objections, the entire record, and the applicable law, the Court SUSTAINS Plaintiff's objection to the calculation of the FMLA period and Plaintiff's objection to the conclusion that Defendant established, as a matter of law, that Plaintiff failed to mitigate damages. Plaintiff's other objections are OVERRULED, and the Court ADOPTS the remaining recommendations of the M & R.

### Standard of Review

A district court that refers a case to a magistrate judge must review de novo any portions of the magistrate judge's proposed findings and recommendations on dispositive matters to which the parties have filed specific, written objections. See FED. R. CIV. P. 72(b). The district court may accept, reject, or modify, in whole or in part, those portions of the proposed findings and recommendations. See id. In contrast, when considering the magistrate judge's orders addressing nondispositive matters, the district court may modify or set aside portions of the orders only if they are "clearly erroneous or contrary to law." FED. R. CIV. P. 72(a).

### Discussion

Plaintiff objects to Judge Johnson's determination that her twelve weeks of FMLA leave began on August 29, 2002 and expired on November 21, 2002. (M & R pp. 38–39). Plaintiff contends that Defendant elected to use its fiscal year, not a calendar year, for purposes of calculating FMLA leave. Defendant admitted in its First Amended Answer at paragraph 16, that "its relevant fiscal year for purposes of its FML policy began on October 1, 2002 and ended on September 30, 2003." (Dkt.# 16, p. 4). Consequently, although Plaintiff did begin FMLA leave on August 29, 2002, that period of leave ended on the last day of the fiscal year, September 30, 2002, and a new twelve week FMLA period commenced on October 1, 2002. This twelve week period expired on December 23, 2002. Therefore, the Court finds that Plaintiff's FMLA leave commenced on August 29, 2002, expired on September 30, 2002, recommenced on October 1, 2002 and expired again on December 23, 2002. As a result of this recalculation, the Court also finds that issues of material fact remain as to whether Defendant improperly interfered with Plaintiff's right to reinstatement under the FMLA when she requested to return to work in December 2002.

Plaintiff also objects to Judge Johnson's determination that Defendant proved, as a matter of law, its affirmative defense that Ms. Mahoney failed to mitigate damages. To begin, the Court notes that Plaintiff's objection misstates the relevant law. The law, as the Supreme Court has articulated it, states that "absent special circumstances," a plaintiff's refusal of an unconditional offer for a "substantially similar" position stops the accrual of backpay. *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 241, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982). Grounds for reasonable refusal are "special circumstances" under the *Ford* precedent. See *Smith v. World Ins. Co.*, 38 F.3d 1456, 1465 (8th Cir.1994). If a defendant establishes that it made an unconditional offer for a substantially similar position, then the plaintiff must present

evidence that the refusal was reasonable. *Id.* Plaintiff concedes in her objection that the offer made to her was unconditional and for a substantially similar position. (Dkt.# 95, p. 9). The evidence Plaintiff presents to establish that her refusal of the offer was reasonable essentially reiterates the factual allegations giving rise to her FMLA and ADA claims. (Dkt.# 62, p. 4). Judge Johnson rejected the sufficiency of this evidence on the grounds that Plaintiff was actively seeking reinstatement at the time the events underlying her evidence took place. The Court would tend to agree if Plaintiff only alleged facts pertaining to one event contemporaneous to a request for reinstatement. However, Plaintiff alleges events spanning over a year. Defendant did not offer Plaintiff a new position until November 2003, nearly a year after she began actively seeking reinstatement and nearly six months after her long term disability benefits ceased. These sort of allegations have been accepted by other courts considering a plaintiff's refusal to accept an offer of reinstatement. In *Smith v. World Ins. Co.,* the Eighth Circuit Court of Appeals wrote, "[w]hile many of the individual factors standing alone would not be sufficient to establish an objectively reasonable rejection of the offer, the totality of the circumstances would have allowed the jury to reach that conclusion." *Smith,* 38 F.3d at 1465. In her deposition, Plaintiff stated that she refused the offer of reinstatement because she did not feel like it was a good faith effort that she could trust. The only relevant inquiry for this Court is whether any reasonable jury could consider Plaintiff's proffered evidence, taken as a whole and in the light most favorable to Plaintiff, and

determine that her refusal to accept Defendant's offer was objectively reasonable. The Court cannot state as a matter of law that Plaintiff's evidence is deficient. Therefore, the Court finds that the jury should consider the issue of mitigation of damages.

It is so **ORDERED.**

## MEMORANDUM, RECOMMENDATION AND ORDER

JOHNSON, United States Magistrate Judge.

Pending before the court[1] are: 1) Plaintiff's Motion for Partial Summary Judgment (Docket Entry No. 54); 2) Defendant's Motion for Partial Summary Judgment (Docket Entry No. 58); 3) Defendant's Motion to Strike (Docket Entry No. 59); 4) Plaintiff's Motion to Strike (Docket Entry No. 61); 5) Defendant's Supplemental Motion for Summary Judgment (Docket Entry No. 67); 6) Defendant's Motion for Summary Judgment (Docket Entry No. 68); 7) Defendant's Motion to Bifurcate Trial (Docket Entry No. 70); 8) Plaintiff's Motion for Partial Summary Judgment (Docket Entry No. 77); 9) Plaintiff's Second Supplemental Motion for Partial Summary Judgment (Docket Entry No. 88); and Plaintiff's Motion to Strike Defendant's Summary Judgment Pleadings (Docket Entry No. 92).

The court has considered the motions, all relevant filings, and the applicable law. Three of the motions, Docket Entry Numbers 77, 88, and 92, were filed beyond the applicable motion deadline without leave of court. The court **ORDERS** that these motions be stricken.[2] For the reasons set

---

1. This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Docket Entry No. 48.

2. Although the court is striking the motions, the court has considered the arguments presented therein in connection with those motions properly before the court.

forth below, the court **RECOMMENDS** that: 1) Plaintiff's and Defendant's partial summary judgment motions on Plaintiff's Family and Medical Leave Act[3] ("FMLA") claim (Docket Entry Nos. 54, 58) be **DENIED**; 2) Defendant's partial summary judgment motion on Plaintiff's back pay claim (Docket Entry No. 67) be **GRANTED**; and 3) Defendant's summary judgment motion on Plaintiff's Americans with Disabilities Act[4] ("ADA") and Employee Retirement Income Security Act[5] ("ERISA") claims (Docket Entry No. 68) be **DENIED IN PART AND GRANTED IN PART**. The court also **DENIES** the motions to strike (Docket Entry Nos. 59, 61) and the motion to bifurcate (Docket Entry No. 70).

## I. Case Background

Plaintiff filed this employment action against her former employer, alleging violations of the FMLA, the ADA, and ERISA.

In December 2000, Defendant hired Plaintiff as a consultant in marketing.[6] Five months later, Defendant hired Plaintiff as a full-time regular employee.[7] Plaintiff held the position of pursuit strategist in Defendant's Sales, Sales Support and Marketing practice.[8]

Between June 24, 2002, and July 15, 2002, Plaintiff regularly worked more than 40 hours a week.[9] Over the weekend of July 7–8, Plaintiff telephoned Brad Williams ("Williams"), a coworker, at home from another employee's work extension and left voice messages referring to Williams as a "tactical genius" and referring to the pending work project as a military operation.[10] On Monday, Plaintiff remained delusional and made little sense during conversations with Sarah Trammel ("Trammel"), sales lead and Plaintiff's immediate supervisor.[11] Trammel sent Plaintiff home.[12] Plaintiff's physician, Scott Sprabery, M.D. ("Dr. Sprabery"), hospitalized her for the treatment of anxiety and depression.[13]

Plaintiff returned to work on August 19, 2002, under doctor's orders to work reduced hours for a month.[14] Defendant agreed to comply with a reduced-hour work schedule.[15] On her second day at work, Trammel called Plaintiff into her office for a discussion about Plaintiff's hours.[16] According to Plaintiff, Trammel suggested that Defendant would not be

---

3. 29 U.S.C. §§ 2601–2654.

4. 42 U.S.C. §§ 12101–12213.

5. 29 U.S.C. §§ 1001–1461.

6. *See* Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. A, letter from Defendant to Plaintiff dated Dec. 6, 2000.

7. *See id.* at Ex. D, notice of change in job status; Ex. H, Plaintiff's Deposition, p. 69.

8. *See id.* at Ex. H, Plaintiff's Deposition, p. 70.

9. *See id.* at Ex. I, Plaintiff's Affidavit, ¶ 1.

10. *Id.* at Ex. M, unidentified notes (presumably those of Delaine Barr ("Barr")) dated July 8, 2002.

11. *Id.*

12. *Id.*

13. *See id.* at Ex. J, Dr. Sprabery's Affidavit, ¶ 3.

14. *See id.* at Ex. H, Plaintiff's Deposition, p. 153; Ex. J, Dr. Sprabery's Affidavit, ¶ 4; Attach. 2, return to work form signed Aug. 12, 2002.

15. *Id.* at Ex. K, Barr's Deposition, p. 65.

16. *Id.* at Ex. H, Plaintiff's Deposition, p. 156; Ex. L, Trammel's Deposition, p. 141–42; *see also* Defendant's Motion for Partial Summary Judgment on Plaintiff's FMLA Claim, Docket Entry No. 57, Ex. B–20, Barr's notes dated Aug. 20, 2003.

able to accommodate a reduction in Plaintiff's work hours.[17] Without settling the work-hour issue, Plaintiff testified, Trammel began to critique Plaintiff's work performance on past job assignments.[18] Plaintiff viewed Trammel's comments as critical, harsh, and untimely.[19] According to Trammel, Plaintiff became extremely upset, began to cry, and left Trammel's office.[20]

Plaintiff immediately went to see Delaine Barr ("Barr") in human resources to discuss Plaintiff's conversation with Trammel.[21] During the course of the conversation with Barr, Plaintiff cried on and off.[22] Barr, professedly out of concern for Plaintiff, called EY Assist, the outsourced employee assistance program,[23] to get the opinion of someone accustomed to dealing with similar situations.[24] Her contact person recommended that Barr check back in with Plaintiff and encourage her to go home early.[25]

Barr went to Plaintiff's office and asked whether Plaintiff felt like she was ready to be back at work.[26] Although Plaintiff answered that she was, Barr recommended that Plaintiff go home and await Barr's telephone call with information on the next step.[27] Acting on the recommendation of the EY Assist counselor, Barr required that Plaintiff undergo an independent medical evaluation ("IME") at Defendant's expense before returning to work.[28] Laura McLaughlin ("McLaughlin") of Managed Health Network, Defendant's EY Assist program outside provider, telephoned Plaintiff on the following day to give her an appointment date with Rahn Bailey, M.D., ("Dr. Bailey"), the designated psychiatrist for Plaintiff's return-to-work IME.[29] In the conversation, Plaintiff con-

---

17. Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. H, Plaintiff's Deposition, p. 156. Trammel does not agree that she indicated that Defendant could not accommodate a reduced-hour schedule. *See id.* at Ex. L, Trammel's Deposition, p. 142.

18. *Id.* at Ex. H, Plaintiff's Deposition, pp. 157–58. Trammel characterizes the discussion differently. *See id.* at Ex. L, Trammel's Deposition, pp. 142–43. Trammel testified that she discussed with Plaintiff the need to limit herself to the responsibilities of a pursuit strategist in order to manage working limited hours and to lower her stress. *Id.* Trammel stated that she mentioned a prior project as an example of Plaintiff's tendency to go beyond her scope of responsibilities. *Id.* at p. 144; *see also* Defendant's Motion for Partial Summary Judgment on Plaintiff's FMLA Claim, Docket Entry No. 57, Ex. B–20, Barr's notes dated Aug. 20, 2003.

19. *See* Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. H, Plaintiff's Deposition, pp. 160–61.

20. *Id.* at Ex. L, Trammel's Deposition, p. 143.

21. *Id.* at Ex. H, Plaintiff's Deposition, pp. 165–72; *see also* Ex. K, Barr's Deposition, p. 72; Defendant's Motion for Partial Summary Judgment on Plaintiff's FMLA Claim, Docket Entry No. 57, Ex. B–20, Barr's notes dated Aug. 20, 2003.

22. Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. H, Plaintiff's Deposition, pp. 171–72; Ex. K, Barr's Deposition, pp. 70–71.

23. Defendant's employee assistance program is operated by Managed Health Network. *Id.* at Ex. T, Sandra Turner's ("Turner's") Deposition, pp. 30–31. Turner, internal director of EY Assist, is the only employee assistance professional who works directly for Defendant. *Id.* at p. 31.

24. *Id.* at Ex. K, Barr's Deposition, pp. 81–82.

25. *Id.* at p. 82.

26. *Id.* at p. 84.

27. *Id.* at pp. 84–86.

28. *See id.* at pp. 98–99; Ex. T, Turner's Deposition, p. 153.

29. Defendant's Motion for Partial Summary Judgment on Plaintiff's FMLA Claim, Docket Entry No. 57, Ex. B–20, Barr's notes dated Aug. 21, 2003.

fided that her symptoms were returning and that she had called her treating physician.[30]

On August 23, 2002, Barr spoke with Plaintiff by telephone regarding several issues.[31] Plaintiff explained that she could not make her appointment with Dr. Bailey scheduled for August 27, 2002.[32] At Plaintiff's request, Barr detailed Plaintiff's leave as follows: July 15–19—sick time; July 22–August 19—short-term disability; August 21–28—sick time; August 29–?—FMLA leave.[33] Barr also spoke with Plaintiff's legal representative and emergency contact,[34] J.P. Kumar ("Kumar"), by telephone later that same day.[35] In addition to discussing several other issues, Barr gave Kumar a facsimile number for confidential transmissions in case Plaintiff would like to provide any additional information from her own treating physician.[36] She also notified him of the date of Plaintiff's rescheduled appointment with Dr. Bailey.[37] Barr's notes reflect that she had another conversation with Plaintiff later that day during which Plaintiff covered many topics, but not in coherent fashion.[38]

On August 28, 2002, Kumar telephoned Barr to notify her that Plaintiff was in the hospital and could not make the rescheduled appointment with Dr. Bailey.[39] In a follow-up letter dated August 28, 2002, Kumar "invoked" Plaintiff's FMLA rights.[40] Barr responded to Kumar's letter on August 29, 2002, stating, "We are placing Mary Beth Mahoney on FMLA (Family Medical Leave Act) leave effective immediately." [41]

Pursuant to its policies, Defendant allows employees sixteen weeks of family medical leave each fiscal year.[42] Additionally, Defendant's policy states, "And while FMLA permits an employer to include paid vacation or disability periods in the leave, Ernst & Young elects the more generous policy of treating any paid and unpaid portions of time, which might be available under other firm policies, as separate from Family Medical Leave." [43]

During the August hospitalization, Dr. Sprabery again treated Plaintiff for depression.[44] He discharged her from inpatient care in early September 2002.[45] Later in September, Plaintiff requested

---

**30.** *Id.*

**31.** *Id.* at Ex. B–20, Barr's notes dated Aug. 23, 2003.

**32.** *Id.*

**33.** *Id.*

**34.** *See* Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. N, letter from Kumar to Barr dated Aug. 28, 2002. In his deposition, Kumar, who later became Plaintiff's husband, indicated that he served as Plaintiff's attorney for a period of time including July and August 2002. *See id.* at Ex. O, Kumar's deposition, pp. 190, 193.

**35.** Defendant's Motion for Partial Summary Judgment on Plaintiff's FMLA Claim, Docket Entry No. 57, Ex. B–20, Barr's notes dated Aug. 23, 2003.

**36.** *Id.*

**37.** *Id.*

**38.** *See id.*

**39.** *Id.* at Ex. B–20, Barr's notes dated Aug. 28, 2002.

**40.** Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. N, letter from Kumar to Barr dated Aug. 28, 2002.

**41.** *Id.* at Ex. P, letter from Barr to Kumar dated Aug. 29, 2002.

**42.** *Id.* at Ex. Q, Defendant's Firm Organization and Administration Manual, ch. 4.

**43.** *Id.*

**44.** *Id.* at Ex. J, Dr. Sprabery's Affidavit, ¶ 5.

**45.** *Id.*

medical leave beginning in early September and extending through November 4, 2002.[46] As of October 15, 2002, however, Plaintiff had not seen Dr. Bailey for the return-to-work IME.[47] In a conversation with Plaintiff on that date, Barr reminded Plaintiff that she must complete the IME before she could return to work.[48] The two also discussed how Plaintiff's FMLA status affected her ability to use vacation time to cover her leave of absence.[49]

On October 31, 2002, Plaintiff requested an extension on her medical leave for an additional month.[50] Upon examination on November 11, 2002, Dr. Sprabery found Plaintiff to be doing well.[51] Also on November 11, 2002, Dr. Bailey evaluated Plaintiff.[52]

Five days later, Dr. Bailey completed his written report based on the clinical interview of Plaintiff and his communication with McLaughlin.[53] He did not contact Plaintiff's treatment providers or perform personality tests on Plaintiff in connection with the formulation of his opinion.[54] In the report, Dr. Bailey discussed Plaintiff's psycho-social history,

her psychiatric symptoms, and her mental status.[55] He opined:

Psychiatrically, Ms. Mahoney currently exhibits significant depressive, manic, and anxiety-laden symptoms that are resulting in psychiatric distress and impairment.... Furthermore, though Ms. Mahoney reports progress due to psychiatric intervention, she continues to present with symptoms that warrant treatment and appear to impair her ability to return to her former position. It appears highly plausible that given her present state, Ms. Mahoney will experience decompensation if subjected to the same level of stress and fast paced environment indicative of her position as a Pursuit Strategist. She would benefit instead from placement in a position that requires less multitasking, fewer deadlines, and is more conducive to her need for flexibility and frequent periods for relaxation and breaks.[56]

Dr. Bailey concluded that Plaintiff suffered from Major Depressive Disorder and was not able to perform the duties of her job.[57] "Therefore, I find [Plaintiff] not fit for duty ...." [58]

**46.** *See* Defendant's Motion for Partial Summary Judgment on Plaintiff's FMLA Claim, Docket Entry No. 57, Ex. B–5, Request for Leave of Absence.

**47.** *See* Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. OO, unidentified notes (presumably those of Barr) dated Oct. 14, 2002, Oct. 15, 2002.

**48.** *Id.* at Ex. OO, unidentified notes (presumably those of Barr) dated Oct. 15, 2002.

**49.** *Id.*

**50.** *Id.* at Ex. PP, unidentified notes (presumably those of Monica Hampton ("Hampton")) undated; Defendant's Motion for Partial Summary Judgment on Plaintiff's FMLA Claim, Docket Entry No. 57, Ex. B–6, letter from Plaintiff to Hampton dated Oct. 31, 2002.

**51.** *See* Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. J, Dr. Sprabery's Affidavit, ¶ 6; Attach. 3, progress note dated Nov. 11, 2002.

**52.** *See id.* at Ex. U, Dr. Bailey's Deposition, p. 164.

**53.** *See id.* at pp. 170, 309; Attach. 1, medical records, Independent Psychiatric Evaluation, p. 1.

**54.** *See id.* at pp. 164–66, 241.

**55.** *See id.* at Attach. 1, medical records, Independent Psychiatric Evaluation, 1–6.

**56.** *Id.* at p. 7.

**57.** *Id.*

**58.** *Id.*

Before either Plaintiff or Defendant knew the results of Dr. Bailey's evaluation, Plaintiff informed Defendant of her desire to return to work on December 2, 2002.[59] After examining her again on December 2, 2002, Dr. Sprabery released Plaintiff to return to work immediately on a three-quarters work schedule for the initial forty-five days.[60] The court found no indication in the record of Plaintiff's contemporaneous submission of this release to Defendant.

Plaintiff telephoned Monica Hampton ("Hampton"), Barr's maternity replacement, on December 2 and December 4 to inquire about Dr. Bailey's findings.[61] Hampton contacted McLaughlin, who reported that Dr. Bailey recommended Plaintiff not return to work yet and be reevaluated in ninety days.[62] Dr. Bailey's records indicate that he did not forward a copy of his report to Defendant until December 6, 2002.[63] Hampton did not relay any of this information to Plaintiff at that time.[64]

Plaintiff wrote Hampton a letter on December 16, 2002, in which she reiterated her desire to return to work.[65] At that time, she remained uninformed about Dr. Bailey's findings.[66] Plaintiff urged Defendant to act quickly because "FMLA leave is unpaid." [67]

As of December 28, Defendant still had not informed Plaintiff of Dr. Bailey's results or provided her with a copy of Dr. Bailey's report.[68] Plaintiff wrote:

> I presume that Dr. Bailey's report did not identify anything that would prohibit me from returning to work. If, for some reason, Dr. Bailey has indicated that he believes that I am not medically capable of returning to work at this time, I would like to file a claim for long-term disability under my benefits as an Ernst & Young employee and will need to receive the necessary forms from you to initiate this claim. In either event, I request a copy of the IME report.[69]

**59.** *See id.* at Ex. PP, unidentified notes (presumably those of Hampton) dated "Week of 11/25/02."

**60.** *Id.* at Ex. J, Dr. Sprabery's Affidavit, ¶ 8; Attach. 4, progress note dated Dec. 2, 2002; Attach. 5, return to work form dated Dec. 2, 2002.

**61.** *See id.* at Ex. PP, unidentified notes (presumably those of Hampton) dated Dec. 2, 2002, Dec. 4, 2002.

In a letter from Plaintiff to Hampton dated December 28, 2002, Plaintiff wrote recounted a conference call with Hampton on December 3, 2002, at which time Hampton "informed [Plaintiff] that an Ernst & Young superior was evaluating Dr. Bailey's report." *Id.* at Ex. X, letter from Plaintiff to Hampton dated Dec. 28, 2002. In a previous letter, Plaintiff set the date of the conference call as December 16, 2002. *Id.* at Ex. QQ, letter from Plaintiff to Hampton dated Dec. 16, 2002.

**62.** *See id.* at Ex. PP, unidentified notes (presumably those of Hampton) dated Dec. 5,

2002. This is the only place in the record that mentions a ninety-day followup.

**63.** *See* Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. U, Dr. Bailey's Deposition, pp. 87, 184.

**64.** *See* Ex. X, letter from Plaintiff to Hampton dated Dec. 28, 2002.

**65.** *Id.* at Ex. QQ, letter from Plaintiff to Hampton dated Dec. 16, 2002; *see also* Ex. X, letter from Plaintiff to Hampton dated Dec. 28, 2002.

**66.** *See id.* at Ex. QQ, letter from Plaintiff to Hampton dated Dec. 16, 2002; Ex. X, letter from Plaintiff to Hampton dated Dec. 28, 2002.

**67.** *Id.* at Ex. QQ, letter from Plaintiff to Hampton dated Dec. 16, 2002.

**68.** *See id.* at Ex. X, letter from Plaintiff to Hampton dated Dec. 28, 2002.

**69.** *Id.*

Plaintiff also requested assistance with a couple of other human resource matters.[70] She again indicated an awareness that Defendant had designated her leave as FMLA-qualifying.[71]

In late December, Defendant hired an individual as a pursuit strategist to replace Plaintiff.[72] The record does not reveal that Defendant notified Plaintiff of this action or that Defendant took any action in recognition of the expiration of Plaintiff's FMLA leave.

In early January, Plaintiff spoke with Sandra Turner ("Turner"), Defendant's internal EY Assist director, about Dr. Bailey's report.[73] Turner revealed Dr. Bailey's findings to Plaintiff.[74] Based on that conversation and without having seen the actual report, Plaintiff stated that she believed that Dr. Bailey's conclusions conflicted with those of her treating physician.[75] Plaintiff received a copy of the report on January 9, 2003.[76] She sent Hampton an e-mail the following day asking for, among other things, information about disability leave and requesting the exact dates of her FMLA leave.[77]

After receiving Dr. Bailey's report, Plaintiff began the application process to claim long-term disability benefits with two insurers.[78] On the statement she provided to Unum in explanation of how her ailment impeded her ability to work, Plaintiff stated that she was hospitalized in July and August and that Dr. Bailey determined that she could not return to work in November.[79] She also stated that her return to work was "[d]ependent on being cleared to return to work by Dr. Bailey."[80] In a letter submitted to Unum in connection with her application, Plaintiff wrote, "Dr. Bailey's opinion has prevented me from returning to work."[81]

In an April phone interview, an Unum representative asked Plaintiff, "What keeps you from working?"[82] Plaintiff responded, "My employer required that I have an Independent Medical Examination. Dr. Rahn Bailey is the doctor that the company chose, and it was Dr. Bailey's opinion that I was not able to return to work."[83] When asked if she would like to return to work, she stated, "Yes, I believe I have been ready to return to work since late November."[84] Plaintiff reported that

---

70. *See id.*

71. *See id.*

72. *See id.* at Ex. Y, letter from Defendant to Ron Guidry dated Jan. 8, 2003 (confirming Defendant's offer of employment and referencing a December start date).

73. *See id.* at Ex. T, Turner's Deposition, p. 150.

74. *See id.*

75. *See id.*

76. *See id.* at Ex. NN, e-mail from Plaintiff to Hampton dated Jan. 10, 2003.

77. *Id.*

78. *See* Defendant's Motion for Partial Summary Judgment on Plaintiff's FMLA Claim, Docket Entry No. 57, Ex. B–11, Unum long-term disability application file; Defendant's

Motion for Summary Judgment on Plaintiff's ADA and ERISA Claims, Docket Entry No. 68, Ex. N, Attending Physician's Initial Statement of Disability.

79. Defendant's Motion for Partial Summary Judgment on Plaintiff's FMLA Claim, Docket Entry No. 57, Ex. B–11, Unum long-term disability application file, § B of application.

80. *Id.*

81. Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 60, Ex. M, letter from Plaintiff to Unum dated Feb. 24, 2003.

82. *Id.* at Ex. N, transcript of phone conversation dated Apr. 14, 2003, p. 1.

83. *Id.*

84. *Id.*

she had not experienced any symptoms for months.[85] She continued, "What is preventing me from returning to work is Dr. Bailey's determination." [86]

On the Attending Physician's Initial Statement of Disability that Plaintiff filed with American Express IDS Life Insurance Company ("American Express"), her private disability insurer, Dr. Sprabery stated that Plaintiff was experiencing "[d]epressed mood and overwhelming anxiety." [87] He reported that "[p]oor concentration[,] [f]requent crying spells [and] anxiety attacks" interfere with her ability to work.[88] Plaintiff reported to American Express, in separate phone conversations, that her "employer won't allow her to return to work yet" and that she felt like she could have returned to work "a long time ago." [89] In a letter to American Express, with which she enclosed Dr. Bailey's report, she noted her disagreement with many factual statements and stated that she sent it because "it nonetheless is the document that contains the medical deter-

mination that prevents me from returning to my position." [90]

On February 20, 2003, Dr. Bailey recommended, without a follow-up evaluation, that Plaintiff seek placement in a less demanding position and opined that she was able "to begin gradual re-entry, meaning part-time, into a lower level position." [91] On the same date,[92] Dr. Bailey signed an attending physician's statement that Plaintiff filed in connection with her long-term disability application.[93] He noted on the statement that Plaintiff could return to part-time work as of that date and should be able to return to full-time work in three to six months with continued treatment.[94]

In communication with Barr early in March, Plaintiff registered her objections to Dr. Bailey's original report, including disagreement with Dr. Bailey's background facts and his conclusions.[95] Barr communicated this information to Turner, who noted, "Mary Beth seems to think that she will be returned to a position at the firm. This is not true. Mary Beth would be better off to move ahead with her life." [96]

85. *Id.*

86. *Id.*

87. Defendant's Motion for Summary Judgment on Plaintiff's ADA and ERISA Claims, Docket Entry No. 68, Ex. N, Attending Physician's Initial Statement of Disability, p. 1.

88. *Id.* at p. 3.

89. Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 60, Ex. O, phone message dated Mar. 14, 2003; Ex. Q, phone message dated April 4, 2003.

90. *Id.* at Ex. P, letter from Plaintiff to American Express dated Mar. 17, 2003.

91. *See* Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. U, Dr. Bailey's deposition, Attach. 1, medical records, letter from Dr. Bailey to Whom It May Concern dated Apr. 22, 2003 (also dated Apr.

24, 2003) (referencing his earlier determination of February 20, 2003).

92. The record is not clear whether the February re-evaluation to which Dr. Bailey referred in his April letter was the opinion that he gave in connection with Plaintiff's long-term disability application. There is no indication in the record that Dr. Bailey re-interviewed Plaintiff.

93. *See* Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. WW, Attending Physician's Statement.

94. *Id.*

95. *See id.* at Ex. T, Turner's Deposition, pp. 171–72.

96. *Id.* at Ex. BB, unidentified notes (presumably those of Turner) dated Mar. 3, 2003; *see also* Ex. T, Turner's Deposition, pp. 171–72, 174–76.

Plaintiff addressed a letter to Hampton on March 19, 2003, that detailed her objections to Dr. Bailey's report.[97] In that letter, Plaintiff also stated that her understanding was that her FMLA leave began on August 29, 2002, and expired on December 29, 2002.[98] By denying her information regarding Dr. Bailey's findings until December 31, 2002,[99] she wrote, Defendant had denied her the opportunity to contest his report until after her FMLA leave had expired.[100] Following a summary of her employment history with Defendant, Plaintiff requested a new IME and expressed an interest in positions in other cities where Defendant had offices.[101]

Plaintiff followed this letter with an e-mail directed to Hampton on April 16, 2003.[102] She referred to Dr. Bailey's February partial release and to her March correspondence.[103] She noted that she had not received any response from Hampton or anyone else concerning her request to return to work.[104] In response, Barr (who had returned from maternity leave) indicated that Defendant planned to take no action while Plaintiff's long-term disability claim was pending.[105] Barr gave Plaintiff a contact number for the disability carrier and told her to contact the carrier for updates.[106] When pressed by Plaintiff in a subsequent e-mail, Barr responded that Dr. Bailey had clarified that Plaintiff could not return to her former position and that Defendant had no available position meeting the physician's restrictions.[107]

Dr. Bailey's April clarification came in response to an inquiry by Turner.[108] Dr. Bailey "strongly recommend[ed]" a second evaluation of Plaintiff or "gradual reentry (part-time) in a position that requires much less multi-tasking, fewer deadlines, and is more conducive to her need for flexibility and frequent periods for relaxation and breaks."[109] Shortly thereafter,

97. *Id.* at Ex. AA, letter from Plaintiff to Hampton dated Mar. 19, 2003, pp. 1–2.

98. *Id.* at p. 2.

99. Other evidence indicates that Plaintiff did not receive any information about Dr. Bailey's findings until Jan. 2, 2003. *See* Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. T, Turner's Deposition, p. 150.

100. *See id.* at Ex. AA, letter from Plaintiff to Hampton dated Mar. 19, 2003, p. 2.

101. *Id.* at p. 3–4.

102. *See id.* at Ex. RR, e-mail from Plaintiff to Hampton dated Apr. 16, 2003.

103. *Id.*

104. *Id.*

105. *Id.* at Ex. RR, e-mail from Barr to Plaintiff dated Apr. 17, 2003.

106. *Id.*

107. Defendant's Motion for Partial Summary Judgment on Plaintiff's FMLA Claim, Docket Entry No. 57, Ex. B–14, e-mail from Barr to Plaintiff dated Apr. 22, 2003 and e-mail from Plaintiff to Barr dated Apr. 17, 2003.

108. Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. U, Dr. Bailey's Deposition, Attach. 1, medical records, memorandum from Jean Wycliff to Turner dated Apr. 21, 2003; *see also* Ex. T, Turner's Deposition, p. 221; Ex. U, Dr. Bailey's Deposition, Attach. 1, medical records, letter from Dr. Bailey to Whom It May Concern dated Apr. 22, 2003 (also dated Apr. 24, 2003); Ex. DD, unidentified notes (presumably those of Turner) dated Apr. 18 and 21, 2003.

109. *Id.* at Ex. U, Dr. Bailey's Deposition, Attach. 1, medical records, memorandum from Jean Wycliff to Turner dated Apr. 21, 2003; *see also* Ex. T, Turner's Deposition, p. 221; Ex. U, Dr. Bailey's Deposition, Attach. 1, medical records, letter from Dr. Bailey to Whom It May Concern dated Apr. 22, 2003 (also dated Apr. 24, 2003); Ex. DD, unidentified notes (presumably those of Turner) dated Apr. 18 and 21, 2003.

Dr. Bailey reaffirmed by letter his recommendation of February 2003, restating that Plaintiff could begin gradual re-entry into a lower level position.[110]

Defendant did not act upon Dr. Bailey's recommendation because, in Turner's view, Plaintiff's pending application for long-term disability indicated that she did not intend to return to work at that time and, thus, made return-to-work assessment or accommodation unnecessary.[111] Turner decided to allow the long-term disability provider evaluate Dr. Bailey's additional opinions in connection with any other medical information available to the carrier.[112]

Sometime later, Dr. Bailey communicated with Dr. Sprabery and Plaintiff's therapist.[113] Based on their shared opinion that Plaintiff had made significant progress and was ready to return to full-time employment, Dr. Bailey opined in a letter dated May 15, 2003, that Plaintiff's intellect, education, desire, and compliance "have apparently produced an outcome sufficient for her return to her previous post, immediately."[114] According to Barr, Turner was "very surprised that Dr. Bailey reversed his decision. Said typically Forensic Psychiatrists do not do this."[115]

After Dr. Bailey released Plaintiff to return to work in May, Barr was not able to find a full-time position for her.[116] Plaintiff wrote Barr on May 20, 2003, after receiving a copy of Dr. Bailey's release to work.[117] Plaintiff requested placement in a position anywhere in North America.[118]

Around the second week of June, Unum approved Plaintiff's claim and granted disability coverage for December 22, 2002, through May 15, 2003.[119] American Express granted Plaintiff benefits from approximately October 15, 2002, through March 2003.[120] At approximately the same time as the approval of her long-term disability benefits, Plaintiff filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") and the Texas Commission on Human Rights ("TCHR"), alleging disability discrimination and retaliation.[121] Plaintiff claimed that Defendant discriminated against her by:

110. *Id.* at Ex. U, Dr. Bailey's Deposition, Attach. 1, medical records, letter from Dr. Bailey to Whom It May Concern dated Apr. 22, 2003 (also dated Apr. 24, 2003).

111. *Id.* at Ex. T, Turner's Deposition, pp. 172–73; 221–22.

112. *Id.* at pp. 222, 234–35.

113. *See id.* at Ex. U, Dr. Bailey's Deposition, Attach. 1, medical records, letter from Dr. Bailey to Whom It May Concern dated May 15, 2003.

114. *Id.*

115. *Id.* at Ex. EE, unidentified notes (presumably those of Barr) dated June 4, 2003.

116. *See id.* at Ex. K, Barr's Deposition, p. 149.

117. *Id.* at Ex. FF, letter from Plaintiff to Barr dated May 20, 2003.

118. *Id.* at p. 1.

119. *See id.* at Ex. GG, unidentified notes (presumably those of Barr) dated June 19, 2003; Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 60, Ex. X, letter from UnumProvident to Plaintiff dated June 12, 2003.

120. *See* Defendant's Motion for Summary Judgment on Plaintiff's ADA and ERISA Claims, Docket Entry No. 68, Ex. A, Plaintiff's Deposition, p. 243. The court cannot locate information regarding the date on which American Express granted her claim.

121. Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 60, Ex. DD, Charge of Discrimination and accompanying letter from Plaintiff's counsel to the EEOC dated June 13, 2003.

1) Removing her from the workplace on or about August 20, 2002; 2) Requiring her to undergo an "Independent Medical Examination" before allowing her to return to work; 3) Refusing to reinstate her to her prior position as a Pursuit Strategist after her treating physician and the IME doctor cleared her to return to work; 4) Constructively discharging her; and 5) Subjecting her to a hostile work environment through these and other disability-based discriminatory acts.[122]

She also alleged that Defendant retaliated against her for asserting her rights under the ADA and the TCHR Act.[123]

Plaintiff continued to pursue reinstatement, but Barr notified her that Defendant had filled her position and encouraged her to look on Defendant's website for openings in other cities.[124] According to her notes, Barr explained Defendant's "uncertainty if/when [Plaintiff] would return to work," but did not answer Plaintiff's direct question as to whether Barr was telling Plaintiff that she could not return to work.[125] In a June 24, 2003, e-mail, Barr offered to give Plaintiff recruiter contact information for the cities in which Plaintiff was interested.[126]

On June 30, 2003, Plaintiff's counsel sent Defendant a demand letter that recounted the course of events from Plaintiff's perspective and threatened legal action pursuant to the ADA and FMLA.[127] Plaintiff's counsel proposed a settlement to include restoration to a position comparable to that which Plaintiff previously held, relocation to Defendant's office in Toronto, Canada, and additional compensation.[128] The summary judgment record contains no evidence of a direct response to this letter.

Defendant received notice of Plaintiff's EEOC complaint on July 8, 2003,[129] and terminated Plaintiff on August 15, 2003.[130] However, in early November 2003, Defendant offered Plaintiff a senior associate position in marketing for Defendant's National Energy, Chemical and Utilities Industry Services Group at a salary higher than that which she was paid as a pursuit strategist.[131]

On January 21, 2004, Plaintiff filed an amended discrimination complaint with the EEOC and TCHR.[132] Plaintiff added a claim based on her formal termination in August 2003.[133] Plaintiff filed this lawsuit

---

122. *Id.* at Ex. DD, Charge of Discrimination.

123. *Id.*

124. *See* Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. GG, unidentified notes (presumably those of Barr) dated June 23, 2003.

125. *Id.*

126. *See id.* at Ex. HH, e-mail from Barr to Plaintiff dated June 24, 2003.

127. *Id.* at Ex. JJ, letter from Scott Newar to Defendant dated June 30, 2003.

128. *Id.* at p. 3.

129. Defendant's Motion for Summary Judgment on Plaintiff's ADA and ERISA Claims, Docket Entry No. 68, Ex. U, unidentified

notes (presumably those of Barr) dated July 8, 2003.

130. Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. K, Barr's Deposition, pp. 146–47; Ex. KK, letter from Barr to Plaintiff dated Aug. 14, 2003.

131. Defendant's Motion for Partial Summary Judgment on Plaintiff's FMLA Claim, Docket Entry No. 57, Ex. B–17, letter from Defendant to Plaintiff dated Nov. 3, 2003; *see also* Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. MM, letter from Defendant to the EEOC dated Nov. 5, 2003.

132. Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. II, Charge of Discrimination.

133. *Id.*

in May 2004 and filed her pending motion for summary judgment on the FMLA claim in May 2005. Defendant responded with several dispositive motions of its own that cover, in total, all of the alleged causes of action, as well as the damages issue of back pay. The briefing on these motions, which began in May 2005, has continued for eight months.

## II. Nondispositive Motions

The parties have filed three timely non-dispositive motions—two motions to strike that are related and one motion to bifurcate. The court addresses them one at a time.

### A. *Motions to Strike*

Defendant filed objections to Plaintiff's summary judgment evidence in connection with a motion to strike that evidence. Specifically, Defendant objects to: 1) portions of Plaintiff's affidavit testimony as irrelevant and as improper lay testimony; 2) portions of Dr. Sprabery's affidavit testimony because the information was not provided to Defendant during Plaintiff's employment; 3) Dr. Sprabery's affidavit testimony to the extent that he offered medical opinions beyond his limited expert designation as a treating physician; 4) portions of Dr. Bailey's deposition testimony as irrelevant; 5) the June 30, 2003, demand letter from Plaintiff's counsel to Defendant as an inadmissible offer of compromise; 6) the American Academy of Psychiatry and Law Ethical Guidelines for the Practice of Forensic Psychiatry as hearsay; 7) portions of Plaintiff's interrogatory responses to the extent that the information was not provided to Defendant during Plaintiff's employment; and 8) Defendant's interrogatory responses because Defendant since has amended those answers.

Plaintiff responded to Defendant's motion and submitted a copy of Defendant's supplemental/amended interrogatory answers, thereby mooting Defendant's last objection. Plaintiff also moves the court to strike Defendant's motion to strike because Defendant's objections are baseless and violate Federal Rule of Civil Procedure 11.

In making its recommendation on the current dispositive motions, the court did not rely on most of the evidence to which Defendant objects. Therefore, the court finds it unnecessary to strike that evidence. However, two objections do require discussion.

■ First, Defendant's objection to Dr. Sprabery's affidavit testimony on the basis that the information was not provided to Defendant during Plaintiff's employment is **OVERRULED**. As explained in another section of this Memorandum, Dr. Sprabery's opinion is relevant to the determination of whether Plaintiff could have returned to work before the expiration of her FMLA-protected leave. Because Defendant's own actions may have interfered with Plaintiff's exercise of her FMLA rights, the court finds that Plaintiff's failure to provide Dr. Sprabery's progress notes to Defendant during her employment is no reason to exclude them at trial.

■ Second, Defendant's objection to the June 30, 2003, demand letter is **OVERRULED**. Submission of the letter is not precluded by Federal Rule of Evidence 408 because Plaintiff offers the letter as proof that she engaged in a protected activity, not as proof of liability for or validity of her claims. *See* Fed.R.Evid. 408 ("This rule ... does not require exclusion when the evidence is offered for another purpose ....").

Because the court finds none of the evidence on which it relied to be objectionable, the court **DENIES** Defendant's motion to strike. The court also **DENIES**

Plaintiff's motion to strike Defendant's motion.

### B. *Motion to Bifurcate*

Defendant moves the court to bifurcate the issues of liability and punitive damages and seeks a protective order delaying discovery concerning Defendant's net worth until the punitive damage phase of trial. Plaintiff objects to any delay in discovery, but does not object to bifurcation of the issues at trial, provided the punitive damages phase is tried to the same jury.

▮ Federal Rule of Civil Procedure 42(b) allows a court to order separate trials on any number of issues or claims "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." The decision whether to bifurcate rests within the sole discretion of the trial court. *Conkling v. Turner*, 18 F.3d 1285, 1293 (5th Cir.1994).

▮ In this case the court finds no reason to separate the liability and punitive damages phases of the trial. No prejudice or greater convenience would redound to the parties as a result of bifurcation. Expedition and economy will be served by trying all issues together. Defendant's motion is **DENIED**.

### III. Summary Judgment Motions

Both parties seek summary judgment on Plaintiff's FMLA claim. Defendant also seek summary judgment on Plaintiff's ADA and ERISA claims. Defendant moves the court to toll Plaintiff's recovery of back pay at the point of its November 2003 offer of reinstatement.

### A. *Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Brown v. City of Houston, Tex.*, 337 F.3d 539, 540–41 (5th Cir.2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. *Id.* at 250, 106 S.Ct. 2505.

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.1992). If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist which must be resolved at trial. *Id.* at 324, 106 S.Ct. 2548.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." *Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir.2001); *see also Boston Old Colony Ins. Co. v. Tiner Assocs., Inc.*, 288 F.3d 222, 227 (5th Cir.2002). The court should not "weigh evidence, assess credibility, or determine the most reason-

able inference to be drawn from the evidence." *Honore v. Douglas,* 833 F.2d 565, 567 (5th Cir.1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." *Meinecke v. H & R Block of Houston,* 66 F.3d 77, 81 (5th Cir.1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. *Brown,* 337 F.3d at 541; *Ramsey v. Henderson,* 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548.

### B. *FMLA Claim*

The FMLA entitles an eligible employee to a total of twelve weeks of leave each year for, inter alia, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); *Haley v. Alliance Compressor LLC,* 391 F.3d 644, 649 (5th Cir. 2004). The FMLA prohibits an employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under" the act and from discriminating or retaliating against an employee who exercises her FMLA rights or who opposes an act made unlawful by the FMLA. 29 U.S.C. § 2615(a); *Richardson v. Monitronics Int'l, Inc.,* 434 F.3d 327, 333 (5th Cir.2005);

*Satterfield v. Wal–Mart Stores, Inc.,* 135 F.3d 973, 975 (5th Cir.1998).

In general terms, Plaintiff claims that Defendant violated the FMLA by failing to reinstate Plaintiff to her former position, by interfering with the exercise of her rights, and by retaliating against her for exercising and attempting to enforce those rights. The first two of these allegations touch on prescriptive or substantive FMLA rights and invoke entitlement or interference theories of recovery. *See Haley,* 391 F.3d at 649. Claims for violations of these rights are brought pursuant to 29 U.S.C. § 2615(a)(1). *See id.* The third allegation fits within the FMLA's proscriptive rights and falls under the retaliation or discrimination theory of recovery. *See id.* Plaintiffs may bring claims for violations of proscriptive rights under 29 U.S.C. § 2615(a)(2). *See id.* The court divides its analysis into two parts corresponding to the two theories of recovery.

### 1. Entitlement and Interference

A plaintiff may be entitled to recovery if she can prove that she was an eligible employee, that her employer interfered with, restrained, or denied her exercise of FMLA rights, and that she was prejudiced by the violation. 29 U.S.C. §§ 2615, 2617(a)(1);[134] *see also Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 89, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002). "The employer is liable only for compensation and benefits lost 'by reason of the violation,' § 2617(a)(1)(A)(i)(I), for other monetary losses sustained 'as a direct result of the violation,' § 2617(a)(1)(A)(i)(II), and for 'appropriate'

---

**134.** Section 2617 states:

Any employer who violates section 2615 of this title shall be liable to any eligible employee affected … for damages equal to … the amount of … any wages, salary, employment benefits, or other compensa-

tion denied or lost to such employee by reason of the violation; or … any actual monetary losses sustained by the employee as a direct result of the violation … and for such equitable relief as may be appropriate ….

equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B).". *Ragsdale,* 535 U.S. at 89, 122 S.Ct. 1155; *see also Nev. Dep't of Human Res. v. Hibbs,* 538 U.S. 721, 740, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003).

Among the employee's substantive FMLA rights are the requirements that the employer grant an eligible employee twelve weeks of leave for an FMLA-qualifying reason and that the employer reinstate that employee, upon return from a qualifying absence, to her former position or to an equivalent one. 29 U.S.C. §§ 2612(a)(1), 2614(a)(1); *Haley,* 391 F.3d at 649. An employee who "is unable to perform an essential function of the position because of a physical or mental condition" loses the right. 29 C.F.R. § 825.214(b). To be equivalent, the position must be "virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status." 29 C.F.R. § 825.215(a); *see also Hunt v. Rapides Healthcare Sys. LLC,* 277 F.3d 757, 766 (5th Cir.2001).

The FMLA also protects benefits previously accrued by the employee and requires the employer to maintain coverage under its group health plan. 29 U.S.C. § 2614(a)(2), (c). In addition to any direct violation of these and other substantive rights, an employer may be liable for interfering with an employee's attempted exercise of her FMLA rights. *Cf.* 29 U.S.C. § 2615 (including the prohibition against the interference with FMLA rights).

Defendant does not debate that Plaintiff was an eligible employee. Defendant does challenge Plaintiff's allegations of denial and interference. As articulated by Plaintiff in the headings of her motion, Plaintiff's specific allegations are: 1) Defendant improperly counted Plaintiff's long-term disability leave as FMLA leave; 2) Defendant failed to notify Plaintiff that it had designated her paid long-term disability leave as FMLA leave; 3) Defendant failed to provide Plaintiff with other FMLA-required notice (specifically, written notice that her leave would be counted against her FMLA leave allotment); 4) Defendant improperly sought a second opinion from a doctor "regularly" utilized by Defendant; 5) Defendant improperly relied upon Dr. Bailey's report to bar Plaintiff from returning to work; 6) Defendant failed to provide Plaintiff with a copy of the IME report; and 7) Defendant failed to seek a third medical opinion regarding Plaintiff's fitness for duty.[135]

### a. Long-term Disability Leave

One of the most significant areas of contention is whether Defendant was allowed to count Plaintiff's long-term disability leave as FMLA leave. Plaintiff bases her argument that Defendant was not allowed to do so, primarily on the following language from Defendant's Firm Organization and Administration Manual: "And while FMLA permits an employer to include paid vacation or disability periods in the leave, Ernst & Young elects the more generous policy of treating any paid and unpaid portions of time, which might be available under other firm policies, as separate from Family Medical Leave." [136]

---

**135.** Over the course of the parties' excessive briefing, Plaintiff, in some ways, has distilled and clarified her complaints, and, in other ways, has transmogrified and conflated them. Therefore, the court relies on the arguments in Plaintiff's partial summary judgment motion as stating her theories of recovery. *See* Docket Entry No. 54.

**136.** Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. Q, Defendant's Firm Organization and Administration Manual, ch. 4.

As Plaintiff interprets Defendant's policies, long-term disability is "available under other firm policies" and, therefore, is "separate from Family Medical Leave" (which Plaintiff reads to mean "FMLA leave"). Plaintiff argues, in essence, that the language of Defendant's policy quoted here, Defendant's failure to state affirmatively that long-term disability does count toward FMLA leave, and Defendant's status as plan sponsor and administrator of the long-term disability policy all plainly indicate that long-term disability is not counted as FMLA leave. Defendant contends that, because the long-term disability program is an insured plan administered by Unum, it is not a firm policy. Defendant also points to a difference between "Family Medical Leave" under its policy and "FMLA leave."

This is an interesting debate, and the court could engage in the deconstruction of Defendant's policies to decide the issue. However, such an exercise is unnecessary because the determination of whether Defendant's policy includes or does not include long-term disability leave in the "Family Medical Leave" offered as a benefit of employment with Defendant is simply not material to the issue of whether the FMLA requires that long-term disability leave be excepted from FMLA leave.

■■■ The FMLA only requires that an employer grant each employee twelve weeks of leave each year for FMLA-qualifying reasons, such as a serious health condition. *See* 29 U.S.C. § 2612(a)(1). It does not dictate that long-term disability leave shall NOT run concurrently with FMLA leave. In fact, the applicable regulations point to the contrary conclusion:

> Because the leave pursuant to a temporary disability benefit plan is not unpaid, the provision for substitution of paid leave is inapplicable. However, the employer may designate the leave as FMLA leave and count the leave as running concurrently for purposes of both the benefit plan and the FMLA leave entitlement.

29 C.F.R. § 825.207(d)(1)(specifically addressing disability leave allowed for the birth of a child); *see also* 29 U.S.C. § 2612(d)(2)(allowing substitution of accrued paid leave for FMLA leave). The Eleventh Circuit addressed the employer's freedom under the FMLA to deem paid sick leave as running either consecutively or concurrently with FMLA leave and stated:

> [A]n employer who is subject to the FMLA and also offers a paid sick leave policy has two options when an employee's leave qualifies both under the FMLA and under the employer's paid leave policy: the employer may either permit the employee to use his FMLA leave and paid sick leave sequentially, or the employer may require that the employee use his FMLA leave entitlement and his paid sick leave concurrently.

*Strickland v. Water Works & Sewer Bd. of Birmingham,* 239 F.3d 1199, 1205 (11th Cir.2001). The court finds nothing that prevents application of these concepts to paid long-term disability leave.

To hold otherwise would unduly burden employers generally (and Defendant specifically) and would run afoul of Congress's intent in enacting the FMLA. *See* 29 U.S.C. § 2601 ("It is the purpose of this Act . . . to entitle employees to take reasonable leave for medical reasons . . . in a manner that accommodates the legitimate interests of employers . . . ."); *Strickland,* 239 F.3d at 1206 ("To balance the needs of employers and sick employees, Congress intended that the FMLA provide employees with a minimum entitlement of twelve weeks of leave, while protecting employers against employees tacking their FMLA entitlement on to any paid leave benefit offered by the employer.") Under Defendant's disability program, short-term dis-

ability benefits extend for up to five months, and long-term disability benefits may extend for several years (contingent on the fulfillment of certain age requirements and proof of continuing disability).[137] If Defendant were unable to count long-term and short-term disability against FMLA leave, an employee could be entitled to FMLA rights for many years after ceasing to work.

In support of her position, Plaintiff argues that any violation of Defendant's policies by Defendant is tantamount to an FMLA violation. In Plaintiff's view, Defendant's policies (purportedly) dictate that long-term disability leave be separate from FMLA leave. Therefore, she argues, Defendant violated the FMLA by failing to honor its leave policy, even though it is more generous than what is required by the FMLA. The court is unconvinced. A company does not expand the scope of its statutory obligations by offering employees broader rights than those required by Congress.[138] *See Dolese v. Office Depot, Inc.*, 231 F.3d 202, 203 (5th Cir.2000)(holding that an employer's policies that define employee leave eligibility more generously than the FMLA do not create an FMLA cause of action).

In sum, Plaintiff has failed to cite to any statutory, regulatory, or other legal authority supporting her position that counting long-term disability leave against her FMLA allotment violates the FMLA. To the extent that Defendant ran Plaintiff's FMLA leave concurrently with her long-term disability leave, it did not act improperly.[139] At the end of the day, Plaintiff received approximately nine months of leave before she submitted any return-to-work certification and almost twelve months of leave before she was terminated. Defendant maintained Plaintiff's health coverage under its group plan throughout the entire time. Defendant did not violate the FMLA by providing less than the statutorily-required twelve weeks of FMLA-qualifying leave.

**b. Notice**

A related argument raised by Plaintiff is that Defendant interfered with her FMLA rights by failing to notify her in writing that her long-term disability leave counted against her FMLA entitlement. Defendant's position is that Defendant provided Plaintiff with notice, but that, even if Defendant did fail to notify Plaintiff, the failure does not result in the entitlement to leave beyond that required by the statute.

Employers that have written policy manuals must include information concerning FMLA entitlements and employee obligations under the FMLA. 29 C.F.R. § 825.301. Upon notice by the employee of the need for FMLA-qualifying leave, the employer bears the burden of designating paid or unpaid leave as FMLA leave. 29 C.F.R. §§ 825.208(a), 825.303(a). The employer must give prompt notice to the employee that paid leave is designated as FMLA-qualifying and will be counted against her FMLA leave entitlement. 29 C.F.R. § 825.208(b)(1). The regulations require that the employer do so prior to the commencement of the leave, provided the employer has sufficient information to make that determination. 29 C.F.R. § 825.208(c).

---

**137.** Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. R, information on Defendant's disability program, pp. 2, 5.

**138.** The court also has considered Plaintiff's estoppel by contract theory and rejects it as lacking merit.

**139.** The record contains considerable room for debate as to whether Defendant actually characterized Plaintiff's long-term disability leave as FMLA leave. The point of this discussion is that doing so would not violate the FMLA.

In 2002, the Supreme Court invalidated the regulatory provision that granted an employee twelve additional weeks of FMLA leave when an employer failed to notify the employee that leave taken counted against her FMLA entitlement. *Ragsdale,* 535 U.S. at 84–96, 122 S.Ct. 1155. In reaching that conclusion, the Court explained that an employer's failure to designate leave as FMLA leave could entitle the employee to relief, but only if the notification failure prejudiced the employee or impaired the employee's FMLA rights. *See id.* at 90, 122 S.Ct. 1155.

Plaintiff's argument lacks merit for several reasons. First, the evidence does not support it. Defendant notified Plaintiff, by telephone on August 23, 2002, and in writing on August 29, 2002, that her FMLA leave commenced on August 29, 2002.[140] On several occasions, Plaintiff acknowledged this as the date her FMLA leave began to run.[141] Therefore, Defendant complied with the notification requirement by prospectively designating Plaintiff's leave as FMLA-qualifying.

Second, even if Defendant failed affirmatively to notify Plaintiff that it would count long-term disability toward FMLA leave, it did not violate the FMLA. At the time that Defendant made the determination that Plaintiff's leave qualified as FMLA leave, Plaintiff had not applied for long-term disability. Plaintiff submitted her long-term disability application no earlier than January 13, 2003,[142] more than nineteen weeks after her designated FMLA leave commenced. Not until mid-June 2003 did Unum approve Plaintiff's claim for long-term disability and grant payments for the period December 22, 2002, through May 15, 2003.[143] Thus, at the time of the FMLA designation, Defendant had no reason to mention how it planned to treat long-term disability leave. Moreover, Defendant complied with the regulations by including information in its manual regarding the scope of FMLA protection, including the FMLA's guarantee of twelve weeks of qualifying leave.

Third, as a matter of law, Plaintiff's twelve weeks of FMLA-protected leave began on August 29, 2002, and ended on November 21, 2002. The parties' various characterizations of Plaintiff's leave and arguments as to the dates of her FMLA leave have no bearing on the application of the FMLA. As mentioned above, neither Defendant's policies nor Plaintiff's understanding of the policies expand her legal rights under the FMLA. *See Dolese,* 231 F.3d at 203.[144] Accordingly, none of Plain-

---

**140.** *See* Defendant's Motion for Partial Summary Judgment on Plaintiff's FMLA Claim, Docket Entry No. 57, Ex. B–20, Barr's notes dated Aug. 23, 2003; Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. P, letter from Barr to Kumar dated Aug. 29, 2002.

**141.** *See, e.g.,* Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. AA, letter from Plaintiff to Hampton dated Mar. 19, 2003, p. 2.

**142.** Defendant's Motion for Partial Summary Judgment on Plaintiff's FMLA Claim, Docket Entry No. 57, Ex. B–11, Plaintiff's long-term disability application file, authorization form. By letter dated December 28, 2002, Plaintiff requested the necessary forms that must be filed in connection with a claim for long-term disability. Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. X, letter from Plaintiff to Hampton dated Dec. 28, 2002.

**143.** *See* Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. GG, *unidentified notes (presumably those of Barr) dated June 19, 2003;* Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 60, Ex. X, letter from UnumProvident to Plaintiff dated June 12, 2003.

**144.** Both parties have changed positions over the course of time regarding the proper characterization of different portions of Plaintiff's

tiff's long-term disability leave actually overlapped with her FMLA leave.

Defendant neither failed to designate Plaintiff's leave as FMLA-qualifying nor interfered with Plaintiff's FMLA rights with regard to the issue of notice.

### c. Reinstatement and Interference with Reinstatement

As the court understands Plaintiff's arguments, Plaintiff claims that Defendant violated her FMLA rights by failing to reinstate her on two occasions. The first time was in December 2002 and the second in May 2003. Based on the court's conclusion that Plaintiff's twelve weeks of FMLA leave ended on November 21, 2002, the court finds that Plaintiff was not entitled to reinstatement in either December 2002 or May 2003. However, Plaintiff still may be entitled to recover for Defendant's alleged interference with her FMLA rights. That is, if Defendant prevented Plaintiff's timely return, then it may be liable under the FMLA. Plaintiff alleges that Defendant interfered with her return to work by requiring that she submit to an IME before reinstatement.

An employer may require certification of the employee's ability to return to work prior to restoration, as long as the request is pursuant to a uniformly-applied policy or practice. 29 U.S.C. § 2614(a)(4); 29 C.F.R. § 825.310(a), (f). The regulations state:

> The certification itself need only be a simple statement of an employee's abili-

ty to return to work. A health care provider employed by the employer may contact the employee's health care provider with the employee's permission, for purposes of clarification of the employee's fitness to return to work. No additional information may be acquired, and clarification may be requested only for the serious health condition for which FMLA leave was taken. The employer may not delay the employee's return to work while contact with the health care provider is being made.

29 C.F.R. § 825.310(c). An employee who fails to submit a fitness-for-duty certification at the end of FMLA-qualifying leave may be terminated. 29 C.F.R. § 825.311(c).

Defendant's basis for requiring an IME by its own physician as a condition of Plaintiff's return to work after August 20, 2002, is not clear in the record. According to the testimony, an employee assistance counselor directed Barr to send Plaintiff home on August 20, 2002, and to schedule her for an IME.[145] Defendant points neither to a company policy justifying this action nor to any contemporaneous articulation of its reasons for this action.

Although Barr subsequently informed Kumar that Defendant would accept additional information from Plaintiff's physician,[146] nothing in evidence suggests that Defendant's intention was to allow Plaintiff to return to work upon a release from her treating physician. Certainly, no evidence

extended leave. In one such characterization, Defendant represented that it recorded Plaintiff's leave as short-term disability from July 22, 2002, to December 21, 2002, and as "Family Medical Leave" from December 22, 2002, to April 13, 2003. Plaintiff's Response to and Motion to Strike Defendant's Objections to Plaintiff's Summary Judgment Evidence, Docket Entry No. 61, Ex. B, Defendant's Amended and Supplemental Objections and Answers to Plaintiff's First Set of Interrogatories, p. 5. It is based on this characterization that Plaintiff argues that absolutely none of her FMLA leave was used through

April 13, 2003. Her calculation relies on Defendant's policies, which are more generous than required by law, granting employees sixteen weeks of family medical leave and excepting short-term disability leave from that calculation.

**145.** *See* Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. K, Barr's Deposition, pp. 98–99; Ex. T, Turner's Deposition, p. 153.

**146.** Defendant's Motion for Partial Summary Judgment on Plaintiff's FMLA Claim, Docket

reveals that it was communicated to Plaintiff that she would be able to return to work if she presented a medical release from her treating physician.[147] In fact, the evidence makes clear that Defendant would not allow Plaintiff to return until she was released by Defendant's physician and repeatedly told this to Plaintiff.[148]

The FMLA does not authorize an IME to determine whether an employee can return to work from FMLA leave.[149] Defendant's FMLA rights extended only as far as requiring compliance with its usual practice [150] of reinstating FMLA-eligible employees upon the submission of return-to-work certifications from treating physicians. *See* 29 C.F.R. § 825.310(a). If a need for clarification had arisen based on that certification, Defendant then could have had its health care provider contact Plaintiff's treatment provider. *See* 29 C.F.R. § 825.310(c). Importantly, Defendant was not allowed to delay Plaintiff's return from FMLA leave based on a need for clarification. *See id.*

In defense of the IME, Defendant now cites *Cooke v. C. Bean Transp., Inc.*, 72 Fed.Appx. 740, 744 (10th Cir.2003), an unpublished opinion in which Tenth Circuit held that a fitness-for-duty exam did not violate the FMLA when it was required by Department of Transportation regulations, and *Porter v. U.S. Alumoweld Co.*, 125 F.3d 243, 247 (4th Cir.1997), an opinion in which the Fourth Circuit held that a fitness-for-duty exam allowed by the ADA did not violate the FMLA. As recognized in those opinions, if governed by state or local law, the terms of a collective bargaining agreement, or the ADA, the employee's return is subject to the applicable provisions. *See* 29 U.S.C. § 2614(a)(4); 42 U.S.C. § 12112(d)(4); 29 C.F.R. § 825.310(b).

In its briefing on the ADA claim, Defendant argues that the IME was a fitness-for-duty examination authorized by the ADA as necessary to determine Plaintiff's ability to perform job-related functions.[151]

---

Entry No. 57, Ex. B–20, Barr's notes dated Aug. 23, 2003.

**147.** Plaintiff's deposition testimony indicates that, sometime before Thanksgiving, she spoke with Gloria Ricarte ("Ricarte") regarding what form needed to be completed to certify that she was ready to return to work. Defendant's Motion for Summary Judgment on Plaintiff's ADA and ERISA Claims, Docket Entry No. 68, Ex. A, Plaintiff's Deposition, p. 228. Ricarte told Plaintiff to use the short-term disability form. *Id.* Nothing in that portion of Plaintiff's testimony states that she understood that she did not need clearance from Dr. Bailey or that Defendant indicated that she did not.

**148.** *See, e.g.,* Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. K, Barr's Deposition, pp. 98–99; Ex. N, letter from Kumar to Barr dated Aug. 28, 2002; Ex. T, Turner's Deposition, p. 153; Ex. OO, unidentified notes (presumably those of Barr) dated Oct. 14, 2002, Oct. 15, 2002.

**149.** To some extent, both parties confuse the FMLA rules regarding return-to-work certification with those regarding medical certification of an employee's entitlement to FMLA leave. *Compare* 29 C.F.R. § 825.310 *with* 29 C.F.R. § 825.307. The court does not address the parties' arguments under 29 C.F.R. § 825.307 because, indisputably, Plaintiff was medically qualified for FMLA leave.

**150.** Plaintiff does not assert that Defendant did not have a uniformly-applied practice of requiring return-to-work certification from employees' treatment providers.

**151.** Defendant apparently did not take the position that the IME was an ADA-authorized fitness for duty examination until litigation commenced. After being contacted by the EEOC, Defendant's internal counsel represented that Defendant decided to require the IME because Plaintiff's "psychological breakdown on August 20, 2002[,] raised reasonable doubts in Ernst & Young's mind as to whether her treating psychiatrist's opinion was accurate." Plaintiff's Motion for Partial Sum-

*Cf.* 42 U.S.C. § 12112(d)(4) (explaining when examinations are prohibited and when they are acceptable). However, the testimony recounting the events of August 20 does not support a finding, as a matter of law, that Plaintiff was unable to perform job-related functions or that a fitness-for-duty examination was consistent with business necessity. According to Plaintiff, she became upset when her supervisor strongly critiqued her past performance; and, although she did cry at times while discussing the conversation with Barr, she made no threats to herself or others, remained coherent, did not become hysterical, and remained capable of performing her job.[152] If accepted as true, Plaintiff's account reveals no conduct on her part that would justify Defendant removing her from the workplace and demanding an IME.

 Thus, a question of fact and credibility prevents the court from determining whether the IME was authorized by the ADA. If the IME was not authorized by the ADA, Defendant violated Plaintiff's FMLA rights by requiring clearance by its physician before allowing Plaintiff to reenter the workplace at the end of her FMLA leave.

Even if Defendant violated Plaintiff's rights, Plaintiff also must prove that the violation caused her prejudice. *See* 29 U.S.C. § 2617(a)(1); *Ragsdale*, 535 U.S. at 89, 122 S.Ct. 1155. If, on the one hand, Defendant can show that Plaintiff could not have acquired a return-to-work certification from her physician at or near the time that her FMLA leave expired, then she suffered no prejudice. On the other hand, if Defendant impeded the exercise of her right to reinstatement through the imposition of the IME requirement, then Plaintiff is entitled to recovery under the FMLA.

 The summary judgment raises several questions of fact that must be resolved before the court can determine whether Plaintiff suffered prejudice as a result of the IME requirement. At the conclusion of her FMLA-protected leave, Plaintiff did not submit certification from her own physician indicating that she was capable of returning to work. However, some evidence suggests that her physician may have been willing to provide a release before November 21, 2002.

On November 11, Dr. Sprabery reevaluated Plaintiff and found her to be "cooperative, alert, euthymic, congruent to mood, logical and goal-directed, with no suicidal or homicidal ideations or hallucinations."[153] Plaintiff reported that she was scheduled for an IME "to return to work."[154] Although nothing in his progress note specifically indicates that he would release Plaintiff to work, nothing precludes it. Plaintiff had no reason to request a release from Dr. Sprabery because she was under the misapprehension that she needed (and would be able) to get one from Dr. Bailey. At her next appointment with Dr. Sprabery almost a month later, Dr. Sprabery's notes reflect virtual identical impressions to those from November meeting.[155] At her December ap-

---

mary Judgment, Docket Entry No. 54, Ex. MM, letter from Defendant to the EEOC dated Nov. 5, 2003. This language calls to mind the FMLA pre-designation certification requirements and does not suggest that the examination was related to Plaintiff's ability to perform job-related functions.

152. Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. H, Plaintiff's Deposition, pp. 156–72.

153. Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. J, Dr. Sprabery's Affidavit, ¶ 6.

154. *Id.* at Attach. 3, progress note dated Nov. 11, 2002.

155. *Compare id. with id.* at Attach. 4, progress note dated Dec. 2, 2002.

pointment, Plaintiff acquired a release form from Dr. Sprabery.[156]

A jury must review this and other evidence [157] to determine whether Plaintiff may have been able to produce a timely return-to-work certification. Because the court cannot decide this fact issue, it cannot determine whether Plaintiff is entitled to recovery for Defendant's violation of the FMLA's return-to-work provisions. This is left for trial.

## 2. Retaliation

A plaintiff also may be entitled to recovery if the employer retaliates against her for exercising her FMLA rights. 29 U.S.C. §§ 2615, 2617. Discrimination claims brought pursuant to the FMLA are not significantly different from similar claims brought pursuant to Title VII [158] or other anti-discrimination laws. *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir.1999). Therefore, in the absence of direct evidence, courts analyze FMLA retaliation claims, like Title VII claims, under the burden-shifting approach first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and recently modified in *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), and *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305 (5th Cir.2004). *Richardson*, 434 F.3d at 333.

Under the "modified *McDonnell Douglas* approach," a plaintiff may trigger a presumption of discrimination by establishing a prima facie case. *Richardson*, 434 F.3d at 333; *Rachid*, 376 F.3d at 312. To establish a prima facie case of retaliation under the FMLA, a plaintiff

must show that: 1) she engaged in a protected activity; 2) she suffered an adverse employment decision; and 3) causation connects the two. *Richardson*, 434 F.3d at 333.

Once a plaintiff has established a prima facie case, the burden shifts to the defendant to proffer legitimate, non-discriminatory reasons for its adverse employment action. *Richardson*, 434 F.3d at 333; *Rachid*, 376 F.3d at 312. If the defendant satisfies this burden, then the presumption of discrimination dissolves. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002).

The plaintiff must then offer evidence tending to show "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)." *Rachid*, 376 F.3d at 312 (internal quotation and alteration marks omitted); *see also Richardson*, 434 F.3d at 333 (analyzing FMLA retaliation claim under the modified approach). If the plaintiff shows that the illegal discrimination was a motivating factor, the defendant must respond with evidence that the same employment decision would have been made regardless of discriminatory animus. *Rachid*, 376 F.3d at 312.

In this case, Defendant does not challenge Plaintiff's claim that she was termi-

---

**156.** *See id* at Attach. 4, progress note dated Dec. 2, 2002; Attach. 5, return to work form dated Dec. 2, 2002.

**157.** The court does not suggest that this is the only relevant fact issue. Other evidence may

be relevant, such as evidence that calls into question Dr. Bailey's conclusions.

**158.** 42 U.S.C. §§ 2000e–2000e–17.

nated, but argues that she cannot produce evidence in support of either of the other two prima facie elements. Plaintiff asserts that she engaged in a protected activity on June 30, 2003, when her attorney contacted Defendant on her behalf and alleged that Defendant violated the FMLA. According to Plaintiff's theory, Defendant retaliated against her opposition to its illegal activities by firing her approximately six weeks later. Defendant argues in response that the letter does not qualify as protected activity under the FMLA because the letter: 1) is an inadmissible settlement offer; and 2) seeks money and other consideration to avoid threatened litigation rather than seeking the protection of the FMLA.

■ The FMLA prohibits an employer from retaliating against an employee who opposes any practice made illegal by the FMLA. 29 U.S.C. § 2615(a)(2). The letter clearly opposed Defendant's actions that allegedly violated Plaintiff's FMLA rights, including her right to reinstatement.[159] Therefore, the letter qualifies as protected activity. See E.E.O.C. v. Dunbar Diagnostic Servs. Inc., 92 Fed.Appx. 83, 84 (5th Cir.2004) (unpublished) (referring to hiring a lawyer and threatening a lawsuit as protected activity).

As for the causation element, Plaintiff points to the relatively short period of time between the date on which Plaintiff's attorney sent the demand letter (June 30, 2003) and the date on which Defendant terminated Plaintiff's employment (August 15, 2003).[160] Defendant argues that Defendant effectively terminated Plaintiff before her attorney sent the letter because Barr told Plaintiff that her position had been filled and no others were available. Defendant also contends that the proper temporal period to measure causation is that between the date on which Plaintiff began her leave and the date of her termination. Finally, Defendant argues that, because Plaintiff received more leave than that to which she was entitled, no causal connection exists between Plaintiff's protected leave and her termination.

■ A short period of time between the protected and the retaliation may provide the necessary causal connection for a prima facie case. See Evans, 246 F.3d at 354 (analyzing a Title VII retaliation claim and noting that the Fifth Circuit has found a time lapse of up to four months to be sufficient to suggest causation); Nero v. Indus. Molding Corp., 167 F.3d 921, 927 (5th Cir.1999)(analyzing an ERISA retaliation claim). Defendant's efforts to expand the period in issue are understandable. However, the time period that is relevant for Plaintiff's allegations is between the June 30 letter and the August 15 termination. The court finds the temporal connection between Plaintiff's protected activity and her termination short enough to raise a fact question.

Plaintiff succeeded in presenting sufficient evidence in support of a prima facie case. In response, Defendant represents that it terminated Plaintiff because Defendant had no positions available for Plaintiff when she sought reinstatement without restrictions in May 2003. By then, Defendant contends, she was no longer protected by the FMLA. On June 24, 2003, Defendant communicated to Plaintiff that it had no appropriate positions open and now claims that it effectively terminated Plaintiff on that date. Defendant's excuse for delaying formal notice of her termination until mid-August is that it re-

**159.** *See* Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. JJ, letter from Scott Newar to Defendant dated June 30, 2003, pp. 2–3.

**160.** *Compare id. with id.* at Ex. KK, letter from Barr to Plaintiff dated Aug. 14, 2003.

sulted from "purely the administrative process of removing her as an employee from E & Y's database."[161]

▮ An employee's reinstatement is not protected by statute if the employee is unable to return after twelve weeks of FMLA leave. 29 C.F.R. § 825.214(b); *see also Oatman v. Fuji Photo Film USA, Inc.,* 54 Fed.Appx. 413, *2 (5th Cir.2002) (unpublished); *cert. denied,* 538 U.S. 978, 123 S.Ct. 1788, 155 L.Ed.2d 667 (2003). By May, Plaintiff's FMLA-protected leave had expired. Yet, under the facts of this case, Defendant's articulated reason does not necessarily qualify as a nondiscriminatory reason.

To begin with, Defendant's articulated reason for its action presupposes that it had the right to terminate Plaintiff simply because no appropriate positions were available. However, a fact question remains as to whether Defendant interfered with Plaintiff's timely return. If Defendant did, termination based on Plaintiff's failure to return is hardly legitimate. In such a case, the lack of positions would not be a sufficient reason to terminate an eligible employee returning from FMLA leave. The record is replete with Defendant-initiated delays to Plaintiff's return, including a delay caused by Defendant's IME requirement, a delay caused by Defendant's failure to provide Plaintiff a copy of the IME report, and a delay caused by Defendant's refusal to act until the insurance carrier processed Plaintiff's long-term disability claim.

Additionally, the "administrative process of removing her as an employee" is not a sufficient justification for a two-month delay between when Defendant's reason applied and when Defendant acted on its reason. The only evidence supporting Defendant's expressed reason for Plaintiff's termination is that Barr found no appropriate positions available in the May–June 2003 time frame. Even if the lack of available positions was a legitimate reason in May or June, it does not justify termination two months later.

Although Defendant may have intended to terminate Plaintiff in June (or earlier[162]), the facts show that it did not release her until August, after she engaged in protected activity. Without resolving several issues of fact and credibility, the court cannot accept Defendant's stated reason for terminating Plaintiff as legitimate. Therefore, the issue cannot be decided on summary judgment.

### C. *ADA Claim*

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see also Rodriguez v. ConAgra Grocery Prods. Co.,* 436 F.3d 468, 473–74 (5th Cir.2006). The ADA also prohibits employers from retaliating against employees who oppose acts that are unlawful under the ADA and from interfering with the exercise of rights or protections granted by the ADA. 42 U.S.C. § 12203.

▮ As are FMLA retaliation claims, ADA discrimination and retaliation claims

---

**161.** Defendant's Motion for Partial Summary Judgment on Plaintiff's FMLA Claim, Docket Entry No. 57, p. 38.

**162.** In March, Turner commented in her notes that Defendant would not return Plaintiff to a position at the firm. Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. BB, unidentified notes (presumably those of Turner) dated Mar. 3, 2003.

are analyzed under the "modified *McDonnell Douglas* approach." *See Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir.), *cert. denied*, 540 U.S. 815, 124 S.Ct. 66, 157 L.Ed.2d 30 (2003); *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir.1995). As stated above, the plaintiff must first make out a prima facie case of discrimination. *Gowesky*, 321 F.3d at 511; *Daigle*, 70 F.3d at 396. In response, the defendant must articulate a legitimate, nondiscriminatory reason for the action that adversely affected the employee. *Gowesky*, 321 F.3d at 511; *Daigle*, 70 F.3d at 396. If the employer offers some evidence to support the stated nondiscriminatory reasons for discharge, the plaintiff must offer evidence of pretext or mixed motives. *Rachid*, 376 F.3d at 312; *see also Richardson*, 434 F.3d at 333–34 (applying *Rachid* to an FMLA retaliation case because "*Rachid* is the law of this circuit, and, even though it addresses a different anti-discrimination statute, consistency requires that we endorse the mixed-motive framework" when applicable).

### 1. Discrimination

■ A prima facie claim of discrimination due to a disability requires proof that: 1) the plaintiff has a disability; 2) she is qualified for the job in question; and 3) she experienced an adverse employment decision due to her disability. *See Rodriguez*, 436 F.3d at 473–74; *Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1050 (5th Cir.1998). A disability is "a physical or mental impairment that substantially limits one or more" of an individual's major life activities; 2) "a record of such impairment;" or 3) "being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see also Rodriguez*, 436 F.3d at 473–74. The person "regarded as" disabled is considered disabled under the ADA if she: 1) has an impairment that is not substantially limiting, but that

her employer perceives to be substantially limiting; 2) has an impairment that is substantially limiting only because others' attitudes toward the impairment; or 3) has no impairment but her employer believes that she has a substantially limiting impairment. *Rodriguez*, 436 F.3d at 473–74; *see also Pegram v. Honeywell, Inc.*, 361 F.3d 272, 287 (5th Cir.2004) (stating that an individual "was 'regarded as' disabled if the employer mistakenly believes that: (1) the individual has a physical impairment that is substantially limiting; or (2) an actual, but not-limiting impairment is substantially limiting.").

The ADA defines neither "major life activities" nor "substantially limits;" however, courts may look to the EEOC regulations for guidance. *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 190 (5th Cir. 1996); *but see Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 479, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (stating that "no agency has been delegated authority to interpret the term 'disability,'" but recognizing the EEOC regulations as providing additional guidance as to its meaning). The regulations provide that the term "major life activities" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i). Other activities could include lifting, reaching, sitting, or standing. 29 C.F.R. § 1630, App. The regulations provide that "substantially limits" means:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general

population can perform the same major life activity.

29 C.F.R. § 1630.2(j)(1).

"Whether an impairment substantially limits a major life activity is determined by considering (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term impact." *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir.1998); *see also* 29 C.F.R. § 1630.2(j)(2). In order for working to be considered the major life activity that is substantially limited, the individual must be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3); *Sutton*, 527 U.S. at 491, 119 S.Ct. 2139; *Blanks v. Sw. Bell Commc'ns, Inc.*, 310 F.3d 398, 401 (5th Cir.2002). An employer that excludes an employee from a broad range of jobs regards that employee as disabled under the ADA. *Blanks*, 310 F.3d at 402.

Plaintiff's ADA claim is based on the allegation that Defendant discriminated "against her because it regarded her as having a disability."[163] The only definition of "regarded as" that arguably fits these facts is the first of the three mentioned in *Rodriguez*—that Defendant believed Plaintiff's psychological impairment to be substantially limiting when, in fact, it was not. Defendant challenges only this aspect of Plaintiff's prima facie case.[164] Defendant argues that, in order for Plaintiff to demonstrate that Defendant mistakenly re-

garded Plaintiff as disabled, she must prove that she was not actually disabled. According to Defendant, Plaintiff's affirmations to the private disability insurers and other evidence demonstrate that she was actually disabled. Alternatively, Defendant argues, the court should estop Plaintiff from now claiming that she was not disabled because of the representations she made in order to receive long-term disability insurance benefits.

▉ The court turns first to the estoppel argument.[165] To support its argument, Defendant relies on *Cleveland v. Policy Mgmt. Sys.*, 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). In *Cleveland*, the Court considered whether the law estopped a Social Security Disability Income ("SSDI") recipient from simultaneously pursuing an ADA claim. 526 U.S. at 797, 119 S.Ct. 1597. Because an ADA plaintiff must prove that she was qualified for the job in question, the plaintiff's sworn assertion for SSDI that she was unable to work "appear[s] to negate an essential element of her ADA case." *Id.* at 806, 119 S.Ct. 1597. However, the Court found that, under some circumstances, statements that appear to conflict may be consistent. *See id.* at 803, 119 S.Ct. 1597. Accordingly, the Court held that an SSDI claimant is not per se precluded from maintaining an ADA action, but must explain the apparent inconsistency. *Id.* at 797–98, 119 S.Ct. 1597. For the plaintiff to survive summary judgment, the explanation must be "sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or

---

163. Plaintiff's First Amended Complaint, Docket Entry No. 40, Plaintiff's First Amended Complaint, ¶ 51.

164. Because Defendant did not challenge the other two elements of Plaintiff's prima facie case, the court assumes that, for purposes of this motion only, Defendant concedes that she can meet both.

165. The court harbors some concern regarding whether judicial estoppel is appropriate where the earlier inconsistent position has not been accepted by a court of law. *See United States v. C.I.T. Constr. Inc. of Tex.*, 944 F.2d 253, 259 (5th Cir.1991).

the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless perform the essential functions of her job, with our without reasonable accommodation." *Id.* at 807, 119 S.Ct. 1597 (internal quotation marks omitted). Only if the plaintiff's explanation fails is she judicially estopped from pursuing her ADA claim. *Id.*

*Cleveland* differs from this case in that the representations at issue here were made to private insurers in order to secure long-term disability benefits. Here, Defendant argues that Plaintiff cannot claim that her psychiatric impairment substantially limited her ability to work because she applied for and was granted long-term disability benefits. Despite the difference between the precise question in this case and the ruling in *Cleveland*, the court finds that *Cleveland* is helpful. *See McClaren v. Morrison Mgmt. Specialists*, 420 F.3d 457, 463 (5th Cir.2005). Two questions are particularly important: 1) whether Plaintiff's representations actually conflict; and 2) whether Plaintiff offers a sufficient explanation.

In Plaintiff's communications with both of the long-term disability insurers, Plaintiff consistently represented that she believed that she could work, but Dr. Bailey opined that she could not and Defendant would not allow her to return.[166] Nothing in the record evidences a conflict between the representations Plaintiff made to the private insurers and her representation in this suit that she was not substantially limited in her ability to work.

Even if Plaintiff's statements were in conflict, she has explained that the only reason she applied for long-term disability benefits was because Defendant would not allow her to work. This is apparent in her applications to the private insurers and in her communications with Defendant.[167] The court finds this explanation, in light of all of the surrounding circumstances, to be sufficient to allow a reasonable juror to conclude that Plaintiff was not substantially limited in her ability to work by her psychiatric impairment. Under the reasoning in *Cleveland*, summary judgment should be denied.

As for Defendant's contention that Plaintiff actually was disabled, some evidence also supports that conclusion. For example, although not dispositive, the fact that Plaintiff applied for and received long-term disability benefits tends to suggest that she was substantially limited (by something, possibly her psychiatric impairment) in the major life activity of work. Also, Dr. Bailey's IME report, Plaintiff's response to the events of August 20, 2002, and her hospitalizations are evidence of substantial limitation. On the other hand, Dr. Sprabery's December release to work, Dr. Bailey's February release to part-time work and May full release, and Plaintiff's own testimony compose some evidence to suggest that Plaintiff, in fact, was not disabled.

---

166. *See, e.g.,* Defendant's Motion for Partial Summary Judgment on Plaintiff's FMLA Claim, Docket Entry No. 57, Ex. B–11, Unum long-term disability application file, § B of application; Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 60, Ex. M, letter from Plaintiff to Unum dated Feb. 24, 2003; Ex. N, transcript of phone conversation dated Apr. 14, 2003, p. 1; Ex. O, phone message dated Mar. 14, 2003; Ex. Q, phone message dated April 4, 2003.

167. *See, e.g.,* Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. X, letter from Plaintiff to Hampton dated Dec. 28, 2002; Defendant's Motion for Partial Summary Judgment on Plaintiff's FMLA Claim, Docket Entry No. 57, Ex. B–11, Unum long-term disability application file, § B of application; Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 60, Ex. M, letter from Plaintiff to Unum dated Feb. 24, 2003; Ex. N, transcript of phone conversation dated Apr. 14, 2003, p. 1.

Defendant attempts to overcome the factual nature of this determination by citing to EEOC compliance and enforcement guidelines. The *EEOC Compliance Manual* states:

> [S]ome chronic conditions may constitute substantially limiting impairments. Such conditions may be substantially limiting when active or may have a high likelihood of recurrence in substantially limiting forms. In addition, such conditions may require a substantial limitation of a major life activity to prevent or to lessen the likelihood or severity of recurrence. . . .
>
> . . . .
>
> Chronic conditions that are substantially limiting when active, and conditions with a high likelihood of recurrence in substantially limiting form . . . are also disabilities.

*EEOC Compliance Manual,* § 902.4(d). Defendant also cites section eight of the *EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities* as stating:

> Chronic, episodic conditions may constitute substantially limiting impairments if they are substantially limiting when active or have a high likelihood of recurrence in substantially limiting forms. For some individuals, psychiatric impairments such as bipolar disorder, major depression, and schizophrenia may remit and intensify, sometimes repeatedly, over the course of several months or several years.

From these two sources, Defendant derives the rule that "a chronic, episodic condition, such as Major Depressive Disorder, constitutes a disability if it is substantially limiting when active or has a high likelihood recurrence in substantially limiting forms."[168] Defendant musters some evidence tending to demonstrate that Plaintiff's depression was episodic, substantially limiting when active, and had a high rate of reoccurrence in substantially limiting forms. Applying the EEOC guidelines to the facts, Defendant concludes that Plaintiff's impairment "meets every element of the definition of a psychiatric 'disability' under the ADA."[169]

In addition to overstating the legal import of the EEOC interpretive guidelines,[170] Defendant has ignored the fact that any determination of whether the indicative "elements" have been fulfilled in a particular case is necessarily factual in nature. Defendant interprets and applies the opinions rendered by Plaintiff's psychiatric expert concerning the nature of Plaintiff's impairment, the likelihood of its recurrence, and the degree of impairment to Plaintiff when active. Certainly, all of this information is helpful in making the determination of whether Plaintiff's psychiatric impairment was disabling, but it is not dispositive. In light of the contrary evidence, such as that cited above, the court must defer to the jury on this issue.

Plaintiff also has presented evidence that Defendant regarded her as disabled, including the testimony concerning the decision to send her home on August 20, 2002, the imposition of an IME requirement, the refusal to reinstate Plaintiff to any position, even after Dr. Bailey released her, and Turner's reaction to Plaintiff's continued pursuit of reinstatement and to Dr. Bailey's revised recommendation.

---

**168.** Defendant's Motion for Summary Judgment on Plaintiff's ADA and ERISA Claims, Docket Entry No. 68, p. 21.

**169.** *Id.*

**170.** *Cf. Sutton,* 527 U.S. at 479–80, 119 S.Ct. 2139 (acknowledging that no authority was given any agency to interpret the term "disability" and explicitly declining the opportunity to decide what deference is due EEOC interpretive guidelines).

Defendant argues that it acted legally when it sent Plaintiff home based on her behavior and when it required an IME to determine whether she could perform the essential functions of her job. The court finds that both are fact-intensive determinations. Even the accounts of August 20, 2002, that are most favorable to Defendant describe Plaintiff's worst behavior on that day as a "continual sort of crying" while in Barr's office. Weeping while in a human resources employee's office, even if temporarily uncontrolled, is hardly a legitimate basis, as a matter of law, for ordering the employee to leave work or to undergo an IME before returning to work. Defendant points the court to no evidence that Plaintiff was unable to perform the essential functions of her job after returning to her desk or that she posed any kind of threat to herself or others. The jury may infer that her behavior interfered with her performance or with the work of others, but it also is free to infer that Defendant was concerned about Plaintiff's psychiatric condition based, not on Plaintiff's present behavior, but on her previous actions.

 Plaintiff has raised fact issues both on whether she actually was disabled and whether Defendant regarded her as disabled. Assuming, then, that Plaintiff can establish all of the required elements of her ADA discrimination claim, Defendant must provide a legitimate nondiscriminatory reason for terminating Plaintiff. As discussed above in relation to Plaintiff's FMLA retaliation claim, Defendant claims that it terminated Plaintiff because it had no positions available in June 2003. As

the court found with Plaintiff's FMLA claim, the lack of available positions is not a reason that transcends all time. To be legitimate, Defendant's reason must be relevant to the date on which it terminated Plaintiff's employment. Defendant makes no such assertion. Summary judgment must be denied.

## 2. Retaliation

 Retaliation claims brought under the ADA, like those brought under the FMLA, require proof of a protected activity, an adverse employment decision, and a causal connection between the two. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir.1999). The burden-shifting analysis applies to these claims as well. *See id.*

Defendant challenges only the causation element. Defendant contends that it terminated Plaintiff on June 24, 2003, when Barr told Plaintiff that Defendant had no openings appropriate for her in the Houston office. Because Defendant did not know about Plaintiff's EEOC complaint until after that date, Defendant insists, no causal relationship can be established between the two.

 Again Defendant loses sight of the fact that telling Plaintiff that no openings were available in the areas of sales or marketing is not an adverse employment action. Defendant did not terminate Plaintiff until August 15, 2003.[171] No evidence indicates that Defendant intended to terminate Plaintiff in June, that Defendant communicated to Plaintiff that she was terminated, or that Defendant took any action to sever the employment relationship at that time.[172] Defendant cannot

---

171. Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. K, Barr's Deposition, pp. 146–47; Ex. KK, letter from Barr to Plaintiff dated Aug. 14, 2003.

172. Barr's notes from her conversation with Plaintiff on June 23, 2003, indicate that Barr told Plaintiff that no positions were available,

but specifically avoided Plaintiff's question regarding termination. *See* Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 54, Ex. GG, unidentified notes (presumably those of Barr) dated June 23, 2003. The e-mail that Defendant cites as evidence that Defendant terminated Plaintiff on June 24, 2003, contains one sentence from Barr to

manipulate these facts with unsupported summary judgment argument regarding when Defendant really made the decision to terminate Plaintiff.

Because Plaintiff met her prima facie burden, the burden returns to Defendant. As discussed above, Defendant's articulated reason is insufficient to justify Plaintiff's August termination. Therefore, Defendant has not met its burden of proving that it is entitled to judgment as a matter of law on Plaintiff's retaliation claim.

### D. ERISA Claim

 ERISA makes it illegal to terminate a participant or beneficiary for exercising any right to which she is entitled under an employee benefit plan or to do so for the purpose of interfering with the attainment of any right to which she may become entitled. 29 U.S.C. § 1140; *Nero,* 167 F.3d at 927. Although a plaintiff must show that the employer had a specific intent to violate ERISA, she need not show that it was the sole reason for termination. *Nero,* 167 F.3d at 927. Direct or circumstantial evidence may support an inference of discrimination. *Id.*

 Defendant contends that no evidence supports a finding that Defendant had specific discriminatory intent to deny her benefits or to interfere with her attainment of any right due her under Defendant's benefit plan. Plaintiff counters that Defendant's refusal to reinstate Plaintiff within two weeks of receiving long-term disability benefits from Unum and Defen-

dant's decision to run her long-term disability concurrently with her FMLA leave provide sufficient evidence to raise a fact issue whether the exercise of her rights under the long-term disability plan partly motivated Defendant's decision to terminate her.

Neither of these is evidence of Defendant's specific intent to violate ERISA. The first relies on a temporal inference that is unjustified in light of Defendant's assistance to Plaintiff in obtaining those benefits. The second is factually unsupported. Defendant notified Plaintiff that her FMLA leave began on August 29, 2002. Later representations that her "Family Medical Leave" leave ran concurrently with her long-term disability leave is not evidence that Defendant changed the dates of her FMLA leave.[173] Having failed to raise any issue of material fact in support of her ERISA claim, Plaintiff cannot pursue it.

### E. Damages

 An employee's refusal of an offer of reinstatement to a substantially equivalent job tolls back pay and front pay. *See Ford Motor Co. v. E.E.O.C.,* 458 U.S. 219, 231–32, 238–39, 241, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982)(addressing Title VII damages claim);[174] *Figgs v. Quick Fill Corp.,* 766 F.2d 901, 902–03 (5th Cir.1985) (same). "[A]bsent special circumstances, the rejection of an employer's unconditional job offer ends the accrual of potential backpay liability." *Ford,* 458 U.S. at 241,

Plaintiff: "I would also be happy to put you in touch with the appropriate recruiter if you let me know which cities you are interested in." Defendant's Motion for Summary Judgment on Plaintiff's ADA and ERISA Claims, Docket Entry No. 68, Ex. B–16, e-mail from Barr to Plaintiff dated June 24, 2003.

173. *See* Plaintiff's Response to and Motion to Strike Defendant's Objections to Plaintiff's Summary Judgment Evidence, Docket Entry

No. 61, Ex. B, Defendant's Objections and Answers to Plaintiff's First Set of Interrogatories, p. 5.

174. *Ford Motor Co.* specifically addresses back pay damages in a Title VII action, but its reasoning extends to FMLA and ADA claims. Additionally, the logic behind tolling back pay damages applies with equal force to front pay damages. *See Smith v. World Ins. Co.,* 38 F.3d 1456, 1466 (8th Cir.1994).

102 S.Ct. 3057; *see also Figgs,* 766 F.2d at 903.

■ When the employer offers a job other than the one sought or held by the employee, the employer bears the burden of demonstrating that the job offered was substantially equivalent to the job sought or held and that the employee's refusal was unreasonable. *See Smith v. World Ins. Co.,* 38 F.3d 1456, 1465 (8th Cir.1994)(placing burden on employer to prove existence of offer and unreasonable rejection); *Sellers v. Delgado Coll.,* 902 F.2d 1189, 1193 (5th Cir.1990) (placing burden on employer to prove failure to mitigate); *E.E.O.C. v. Exxon Shipping Co.,* 745 F.2d 967, 978 (5th Cir.1984) (listing substantial equivalence and reasonableness of refusal as issues). As these typically are issues of fact, Defendant must show that no reasonable jury could find for Plaintiff based on the summary judgment evidence. *See Exxon Shipping Co.,* 745 F.2d at 978 (labeling the issues as fact questions); *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505 (defining genuine issue of fact to be one that a reasonable jury could decide in favor of either party).

Substantial equivalence means that the offered position allows "virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status," as the position that the employee originally held. *Sellers,* 902 F.2d at 1193 (quoting *Sellers v. Delgado Cmty. Coll.,* 839 F.2d 1132, 1138 (5th Cir.1988)); *see also Exxon Shipping Co.,* 745 F.2d at 978 (explaining that a job does not meet this criteria if it requires different skills, background, and experience or involves more onerous working conditions). "Special circumstances" includes complications such as being forced to move a great distance to fill another job. *Ford Motor Co.,* 458 U.S. at 238 n. 27, 102 S.Ct. 3057.

Defendant argues that it made Plaintiff an unconditional offer of reinstatement to a job that was substantially equivalent to Plaintiff's pursuit strategist position. Because Plaintiff lacked any legitimate reason for refusing to accept the position, Defendant continues, she failed to mitigate her damages. As a result, Defendant contends, back pay and front pay should be tolled as of the date of its offer. Plaintiff argues that Defendant subjected her to a "pattern of vindictive behavior and to a hostile work environment" and, thus, she was not obligated to accept the unconditional offer.[175]

Defendant offered Plaintiff reinstatement on November 3, 2003, to the position of senior associate in marketing for Defendant's National Energy, Chemical and Utilities Industry Services Group at a salary higher than that of her prior position and with comparable benefits.[176] Barr testified that the position offered was very similar to Plaintiff's prior position in that it was in the same field, included the same benefits package, was positioned at the same organizational level, did not involve providing professional services to clients, was located at the same building in Houston, and involved the same working conditions, environment, and working hours.[177] The position's duties, like those of Plain-

---

**175.** Plaintiff's Response to Defendant's Motion for Partial Summary Judgment, Docket Entry No. 62, p. 4.

**176.** Defendant's Motion for Partial Summary Judgment on Plaintiff's FMLA Claim, Docket Entry No. 57, Ex. B–17, letter from Defendant to Plaintiff dated Nov. 3, 2003; *see also* Plaintiff's Motion for Partial Summary Judgment,

Docket Entry No. 54, Ex. MM, letter from Defendant to the EEOC dated Nov. 5, 2003.

**177.** Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment on Plaintiff's Back Pay Damages, Docket Entry No. 67, Ex. Q, Barr's Affidavit, §§ 5–7.

tiff's job as a pursuit strategist, included "preparing business development strategies and plans, coordinating and overseeing marketing collateral, and researching client information for marketing purposes." [178] The position also was consistent with Plaintiff's particular skills, background, and experience.[179]

Other than asserting generally that the position was not substantially equivalent, Plaintiff fails to point to any evidence that contradicts the evidence submitted by Defendant. The court finds that the position offered was substantially equivalent to Plaintiff's pursuit strategist position.

In support of Plaintiff's position that she was not required to accept the offer, Plaintiff points to the following acts by Defendant that she claims exemplify a "pattern of vindictive behavior" and "a hostile work environment:" 1) Defendant's August 20, 2002, removal of Plaintiff from the workplace; 2) Defendant's refusal to reinstate Plaintiff for one year thereafter; 3) Defendant's reliance on a IME that failed to meet accepted forensic psychiatry standards; 4) Defendant's refusal to order a second IME; 5) Defendant's decision to terminate Plaintiff; and 6) Turner's remark that Plaintiff would not return to work with Defendant.[180] In her deposition, Plaintiff stated that she refused the offer of reinstatement because she did not feel like it was a good faith effort that she could trust, particularly at the point after she had been terminated and had read Defendant's response to her EEOC charge.[181]

These reasons do not raise a genuine issue of material fact as to the reasonableness of her refusal of Defendant's job offer. The six specific acts that Plaintiff identified in her response brief as demonstrating vindictiveness and hostility all occurred, or at least began, prior to May 2003, when Plaintiff still was requesting reinstatement. Therefore, they fail to provide evidence that her rejection of the November 2003 offer was reasonable. Furthermore, terminations and EEOC disagreements are not special circumstances justifying the refusal of substantially equivalent job offers. If they were, offers of reinstatement, which follow terminations and employment disputes, never would toll damages.

As no reasonable jury could find for Plaintiff on the issue, the court finds that Defendant's November 3, 2003, offer of reinstatement tolls Plaintiff's back pay and front pay damages.

## IV. Conclusion

Based on the foregoing, the court the court **RECOMMENDS** that: 1) Plaintiff's and Defendant's partial summary judgment motions on Plaintiff's FMLA claim be **DENIED**; 2) Defendant's partial summary judgment motion on Plaintiff's back pay claim be **GRANTED**; and 3) Defendant's summary judgment motion on Plaintiff's ADA and ERISA claims be **DENIED IN PART AND GRANTED IN PART**. The court also **DENIES** the motions to strike and the motion to bifurcate. The court **STRIKES** as untimely Plaintiff's Motion for Partial Summary Judgment, Plaintiff's Second Supplemental Motion for Partial Summary Judgment, and Plaintiff's Motion to Strike Defendant's Summary Judgment Pleadings.

178. *Id.* at ¶ 5.

179. *Id.* at ¶ 7.

180. *See* Plaintiff's Response to Defendant's Motion for Partial Summary Judgment, Docket Entry No. 62, p. 5.

181. Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment on Plaintiff's Back Pay Damages, Docket Entry No. 67, Ex. P, Mahoney's Deposition, pp. 269–72.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have ten days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk, either electronically or by mail to P.O. Box 61010, Houston, Texas, 77208. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.